## WILLIAM W. TREAT *vs.* JOHN CURTIS & wife.

Suffolk.    March 29. — April 2, 1878.    AMES & MORTON, JJ., absent.

The admission of immaterial evidence, offered in reply to immaterial evidence, is within the discretion of the judge presiding at the trial.

A. conveyed land under attachment to his brother, and he the next day conveyed it to A.'s wife, who borrowed $700 from her friends and $1500 from B., giving him a note for the amount, secured by a mortgage on the land, with which to dissolve the attachment. A. afterwards borrowed $500 from his brother, which he paid to B., and also gave to B. a mortgage on his personal property, to secure his note for $1000, the wife being present when the mortgage was given. B. thereupon discharged the mortgage on the land, and gave up the note secured by it. In a writ of entry to recover the land, on the ground that it was conveyed to the wife in fraud of creditors, she contended that she paid full consideration for the land. *Held*, that the chattel mortgage was admissible in evidence to contradict her claim.

WRIT OF ENTRY to recover a parcel of land in Boston. Plea, *nul disseisin.* At the trial in the Superior Court, before *Rock-*

*well*, J., it appeared that John Curtis conveyed the demanded premises, on December 5, 1870, to his brother, Lawrence Curtis, who, by a deed dated December 6, 1870, and acknowledged in the April following, conveyed the same to Bridget Curtis, the wife of John.

The demandant testified that, about December 1, 1870, John Curtis owed the firm of Henry Mayo & Co., of which the demandant was a member, about $2700, for which, on that day, they sued him and attached his real estate ; and that about $2200 of the same was paid on or before December 6, 1870, at which time the attachment was dissolved.

Evidence was introduced tending to show that John Curtis had acquired habits of intemperance, so as at times to be unfit to do business ; that when the attachment was made, his wife made up the $2200 above mentioned, by borrowing $700 of her friends and $1500 of one McLaughlin, giving him, on December 6, 1870, her note for $1500, secured by a mortgage on the real estate ; that John took his deed of December 5, to his brother Lawrence, expecting to borrow enough money of him to pay all his debts, and to leave the deed with him as security, or to return the deed to the wife ; that, instead of that, John borrowed $500 of Lawrence, and left the deed with him, and on December 14, 1870, after his return without the deed, the mortgage to McLaughlin not being good, the $500 borrowed of Lawrence Curtis was paid to McLaughlin, and he released his mortgage on the land, and gave up the mortgage note and took a chattel mortgage upon a portion of John's personal property, together with John's note for $1000, which mortgage has never been paid or foreclosed.

Evidence was also introduced tending to show that on December 5, 1870, John Curtis did not owe over $100 aside from his debt to Henry Mayo & Co., and that he owned personal property, consisting of wood, fish, and horses and wagons, claimed to be worth about $3000.

John Curtis continued to trade with Henry Mayo & Co. at the rate of about $1000 a month for about twenty months, after the conveyance was made, paying them on account from time to time ; but the demandant testified that he was at all times in their debt at least $500 ; and that there had never been any set-

tlement of accounts between Mayo & Company and John Curtis, from the time when he began trading with them until he left off. There was no other evidence on this point except the fact that, in the bill of items in the original action, the first item charged therein was dated, as delivered, October 21, 1871, and the auditor's report hereinafter mentioned.

On April 2, 1873, the deed from Lawrence Curtis to Bridget Curtis was put on record; and on April 9, 1873, Henry Mayo & Co. sued John Curtis and made a special attachment of the property, and on October 7, 1875, recovered judgment for $2298.52 damages, and $104.93 costs. In December, 1875, the property was sold on execution to the demandant, who bought the same in behalf of Henry Mayo & Co.

The demandant contended that the conveyance to Bridget Curtis was made to defraud creditors, and was void. The tenants contended that the cause of the conveyances was to protect the loan of Lawrence Curtis, and also because the habits of John Curtis rendered it unsafe for him to hold and manage property; that, at the time of the conveyance, he owned more than enough other visible property to pay all his debts; that all his debts then existing were paid in full; and that Bridget Curtis paid valuable consideration for the conveyance from her husband, such consideration being the money raised by her for the discharge of the attachment as above mentioned.

The demandant, on cross-examination, testified that the first item in the original account was dated October 21, 1871; that there was a charge made in that account of twenty barrels of salmon, which the auditor disallowed because the defendant swore, contrary to the fact, that the salmon were rotten; and that the finding of the auditor was affirmed by the court.

The tenants then offered in evidence the original bill of items in the original action, for the purpose of showing, as evidence in itself, that, at the time the conveyance was made, John Curtis owed the demandant nothing, because the first item in the account was subsequent to the conveyance, and because there was an item in the account which was disallowed by the judgment of this court, expressed in terms which would reduce the balance to nothing. The bill of items was then admitted against the demandant's objection.

The demandant then offered in evidence *de bene esse* the auditor's report in the original action, for the purpose of showing that he found that the account had not been settled, that there had never been any settlement between the parties, and that therefore he allowed John Curtis credit with items for services which took place before October, 1871; and also for the purpose of showing that, instead of disallowing the item mentioned above, the auditor reduced the price upon the salmon, reducing the item from $400 to about $200; and that the only change in that bill found by the auditor was in reducing the price of the salmon, and also in allowing John Curtis credit for items prior to the date of the bill, the auditor finding that they had not been settled. The judge admitted the auditor's report, and the tenants excepted.

The tenants objected to the introduction in evidence of the chattel mortgage made to McLaughlin, but the judge admitted it against their objection. It appeared that John Curtis had no real property, other than that included in his conveyance of December 5, 1870, and that his personal mortgage to McLaughlin of December 14, 1870, covered the greater portion of his personal property, except fish, which made up his stock in trade, and the wood used in his business of smoking fish; that John Curtis could not write, and his wife had always kept his accounts for him; that on December 5, 1870, as well as before and after that time, she understood the condition of his business, and the amount of his debts and assets; that it was in accordance with her advice that the conveyances of December 5 and December 6 were made; that Bridget Curtis was present when the personal mortgage from John Curtis to McLaughlin was drawn up, and McLaughlin testified that she said to him, as they were coming out of the office, " Now if anybody, Henry Mayo or any one else, interferes with the property, you can claim it."

The jury returned a verdict for the demandant; and the tenants alleged exceptions.

*S. B. Allen*, for the tenants.

*M. F. Dickinson, Jr. & J. Fox*, for the demandant, were not called upon.

ENDICOTT, J. The tenants, upon cross-examination of the demandant, made inquiries respecting the proceedings before the

auditor, and the finding of the auditor in the original action, apparently for the purpose of showing that one item was improperly charged, and was not allowed by the auditor. This evidence was immaterial and irrelevant to the issue on trial; but it was introduced by the tenants, and it was clearly within the discretion of the presiding judge to allow the demandant to put in the auditor's report, to meet any inference which might be drawn from the cross-examination. The introduction or exclusion of immaterial evidence to meet immaterial evidence is within the discretion of the court. *Brooks* v. *Acton*, 117 Mass. 204. *Hathaway* v. *Evans*, 113 Mass. 264. The report having been thus admitted, there is no ground for exception, unless the presiding judge refused to limit its application. It does not appear that he did, or that any instructions on this point were requested, and we must presume that proper instructions were given.

It appears from the bill of exceptions that John Curtis conveyed, on December 5, 1870, the land in controversy to his brother, Lawrence Curtis, who the next day conveyed it to Bridget Curtis, the wife of John. To discharge the attachment on the land, she borrowed $700 from her friends, and $1500 from McLaughlin, giving him a note for that amount, secured by a mortgage on the land. John Curtis afterwards borrowed $500 from his brother Lawrence, which he paid to McLaughlin, and on December 14, 1870, gave to McLaughlin a mortgage on his personal property, to secure his note for $1000. McLaughlin thereupon discharged the mortgage on the land, given him by Bridget Curtis, and gave up the note for $1500, which that mortgage was given to secure. Bridget Curtis was present when this mortgage was made and delivered. The only consideration, therefore, which Bridget Curtis paid for the conveyance of the land to her was the sum of $700, which she had borrowed from her friends, and the chattel mortgage was admissible for the purpose of contradicting her claim that she had paid full consideration for the conveyance to her.       *Exceptions overruled.*