EMANUEL ISAACS

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa November 13, 1886.*

1. EVIDENCE—*declarations of agent as against principal.* The declarations and statements made by an agent at the time of the payment of money to him for his principal, and at the time of his giving a receipt therefor, in respect to the subject matter being transacted, are admissible in evidence against the principal.

2. NEW TRIAL—*newly discovered evidence.* Evidence known to a party's attorney at the time of a trial, can not be regarded as newly discovered evidence, so as to entitle the party to a new trial. The attorney's knowledge in such case is that of the party.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Messrs. BARNUM, RUBENS & AMES, for the plaintiff in error.

Mr. GEORGE HUNT, Attorney General, for the People.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

Emanuel Isaacs was tried, convicted, and sentenced to imprisonment in the penitentiary for two years, upon an indictment for buying, receiving and concealing stolen property,—a gold watch and chain belonging to one W. Fitzhugh Smith. This writ of error is brought to reverse the judgment.

The evidence shows that S. H. Meyers was a licensed pawn-broker at 224 South Clark street, Chicago. Emanuel Isaacs lived at that number, and conducted the business, as agent, for Meyers. Leopold Marx was a clerk in the employ of Meyers at that place. On Saturday, the 18th of July, 1885, William Fitzhugh Smith was playing lawn tennis at Lincoln Park, in Chicago, from 3 o'clock P. M. until 7:30 P. M. He laid his coat on the ground near where he was playing, and placed his watch, gold pencil and chain in the pocket. When he stopped playing, at 7:30, the watch, pencil and chain had been stolen. On Monday, July 20, 1885, a report was made from S. H. Meyer's pawn-shop to the police headquarters, of the articles pawned on July 18, preceding, and among the list was described one hunting-case gold watch and chain, No. 11,326, taken in upon a loan of $45, made at a quarter to ten on Saturday night, to R. Shonn, twenty-nine years of age, etc., and for which a pawn-ticket was issued. On July 30, 1885, Smith, and one Cosgrove, a detective, called upon Isaacs, described and demanded the watch. Isaacs claimed that a few days after the watch was pawned, the holder of the pawn-ticket called at the pawn-shop, said he could not redeem the watch, and wanted to sell the pawn-ticket; that he (Isaacs) purchased the ticket, and subsequently sold the watch, and was unable to return it. After this, Smith, by his attorney, Mr. Hodges, brought an action in trover against Isaacs and Marx, to recover the value of the watch and chain. Mr. Beattie was employed by Isaacs and Marx to defend the

suit, and while the suit was pending, in pursuance of negotia-
tions between Beattie and Hodges, Beattie and Smith exe-
cuted a writing, in and by which Smith deposited with Beattie,
and agreed to pay him, the sum of $75 for the return of the
watch within ten days, and in case of failure to return it, the
money was to be returned to Smith. At about the expiration
of the ten days, October 30, 1885, the watch was returned by
Beattie, and the suit against Isaacs and Marx was dismissed.

It is insisted the verdict is not sustained by the evidence.
Upon the trial, defendant and Marx testified, that when the
watch was presented and pawned at the pawn-shop, the entire
business was done with Marx; that Marx gave the pawn-ticket
to the pawner, and Marx made out the report to police head-
quarters; that the business belonged to Meyers, and not to
Isaacs. Isaacs testified that he had not seen the watch until
the time of the purchase of the pawn-ticket, when he called
upon Marx to show him the watch; that he bought the pawn-
ticket for $5, took the watch and chain as it was, and threw
it into the show case; that on the 27th of July he sold it for
$65; that he had no knowledge at that time that a watch
had been stolen from Smith, or that the watch he purchased
and sold was a stolen watch. Successive applications, at dif-
ferent times, were made to Isaacs for the watch, by Smith,
Cosgrove and Hodges, and they testify to conversations had
with him, tending to show that it was in his power to get
the watch, and that he concealed the name of the purchaser
to whom he sold it. Thus, Smith testified that Isaacs told
him he sold the watch for $85; that he did not know the
man that it belonged to, nor the man to whom he sold it;
that when, afterward, he asked Isaacs if he could produce the
watch, saying he would be willing to give $100 for it, Isaacs
replied that he thought he might,—he would try. Cosgrove
testified that Isaacs told him he sold the watch to a man
near the stockyards, but he refused to give the purchaser's
name, and saying if it was a friend of theirs from whom the

watch was stolen, he would get it back; if it was not a friend of theirs, it would cost some money. Hodges testified that Isaacs told him he had sold the watch to a stockyards man, but did not say who he was. These statements are denied or explained away by Isaacs.

The Smith watch had engraved upon the case the monogram, "A. W. F. S." There is no doubt but that it was the Smith watch which was returned, as before stated. Isaacs and Marx both testify this is not the watch which was pawned. Isaacs testified that he first saw that watch, that morning of the trial; that before that he never had it in his hand; that he had no direct knowledge of where his attorney got the watch; that he had heard it spoken of in a general way; that he did not receive the $75 paid for its return; that he did not know how the watch got into his attorney's possession. Upon the trial, the defendant produced another watch bearing the number 11,326, (the same as Smith's watch,) and said it was the watch pawned at his place on July 18, 1885, and referred to in the report made to police headquarters, and that he never had the Smith watch. In this statement he was supported by Marx. They denied that the watch they took had any such inscription or monogram as that of "A. W. F. S.," which was on the Smith watch, and this watch so produced by the defendant at the trial shows it has none such. Defendant's account of obtaining this watch is, that it was sent from Pittsburg, by express, by a man of the name of Van Balen; that he found out Van Balen was the purchaser from him, from a man named Spielman, an agent for some pen house, who lives in St. Louis; that Spielman was on here, in Chicago, and said, "If you will go to Jake Cappels, who keeps on State street, he will tell you where he (Van Balen) is;" that he applied to Cappels, and inquired if he knew where Van Balen was, and had him write to Van Balen to forward the watch. Cappels testified he was a cigar manufacturer at 420 State street, and had lived in Chicago since 1876; that he knew a man by the

name of Van Balen ; that he lived in no particular place, and was a traveling man in the pen business ; that he was in Chicago in July preceding, and was there about January then last, and also about the latter part of August ; that he knew Spielman ; thought he lived in St. Louis ; that Spielman knew Van Balen ; that he had a request from Isaacs to communicate with Van Balen regarding a watch and chain ; that he received two letters from Van Balen, from Pittsburg ; that he received a package, by express, from Van Balen, from Pittsburg ; that it was brought down to Isaacs, and was opened in his presence ; that it contained this watch and chain. The express package was produced, and bore every appearance, from marks on it, as having been sent by express from Pittsburg.

Had there been in the case the testimony of this man Van Balen that he purchased this watch from Isaacs at the time the latter says he sold the pawned watch, the evidence touching this watch would have been of a more satisfying character. There does not appear to have been any effort to procure Van Balen's testimony. The fact of the return of the stolen watch by Isaacs' attorney stands out a most damaging piece of evidence against the defendant, in no way mitigated, save by his own testimony above given. The credibility of witnesses is for the determination of the jury, and where there is a conflict in their testimony, it is for the jury to say to whom they will give credence. In the discharge of this their proper function, the decision of the jury appears to have been adverse to the defendant. We can not say that in this they erred. And upon an examination of the whole testimony in the case, we are unable to say the verdict is so unwarranted by the evidence, as, upon that ground, to call upon the court to set it aside.

The only questions of law arising are the admission in evidence of the writing above named, between Beattie and Hodges, for the return of the watch, and what was said by

the former in the making of it, and the not granting a new trial on the ground of newly discovered evidence. Hodges testifies that he had agreed with Beattie for the return of the watch for $75; that afterward, in a conversation with Isaacs, the latter said he wanted witness to pay the money over to him; that witness told Isaacs he would not trust him with $75; that Isaacs replied, "All right; do it with Beattie; but I want to prescribe the form of the receipt;" that he wanted the receipt to state that we employed Beattie to get the watch, to which witness assented; that Isaacs said he would give the watch up for $75, and to go ahead with Beattie and pay the money and sign the receipt on the terms stated; that in ten days he would give me the watch or the money, or Beattie would; that witness then went to Beattie, and drew up a receipt and contract such as Isaacs had directed,—such as they had talked about; that it was signed, one by Beattie, and one by Smith, and witness paid the former $75. This testimony, although contradicted by Isaacs, tended to show that Beattie was the accredited agent of Isaacs in the execution of the writing, and rendered it, and what Beattie said at the time of its execution, admissible in evidence against Isaacs.

The so-called newly discovered evidence was contained in an affidavit made by Mr. Beattie, detailing the manner in which he obtained the return of the watch; that the return of the watch and chain was negotiated and procured by the affiant, and others acting for him, without any assistance or knowledge from Isaacs, and that the latter never received any part of the $75. Manifestly this is not such newly discovered evidence as will entitle a party to a new trial. All of it, except the mode of procuring the watch, was known to the defendant at the trial, and substantially testified to by him. The way in which the watch was obtained was then known to his attorney, and evidence known to a party's own attorney, at the time of the trial, can not be regarded as newly discov-

ered evidence since the trial. The attorney's knowledge must be counted as the party's knowledge.

Finding no error in the record, the judgment must be affirmed. *Judgment affirmed.*

Mr. CHIEF JUSTICE SCOTT: I dissent from the conclusion reached in this case. I am of opinion the verdict is not warranted by the evidence.