——— v. State of Ohio.    [Vol. V, N. S.

## EVIDENCE IN CRIMINAL TRIALS.

[Circuit Court of Summit County.]

JOHN ——————— v. THE STATE OF OHIO.

Decided, April Term, 1904.

*Criminal Law—Prosecution for Robbery—Evidence—As to Use by the Accused of Intoxicants and Drugs—New Trial will not be Granted for the Purpose of Admitting.*

1. Statements of third persons to the accused, charging him with crime, and his conduct or replies in response thereto are admissible in evidence against the accused. The value of such evidence depends upon the circumstances of the case, and it should be received and examined with great caution.
2. Where inadmissible evidence has been admitted in behalf of one party, without objection, similar evidence may be admitted to rebut or explain it.
3. After a conviction for robbery, a motion for a new trial based on the fifth clause of Section 7350, Revised Statutes, for "newly discovered evidence material for the defendant which he could not with reasonable diligence have discovered and produced at the trial," will not be granted, where such evidence consists of affidavits setting forth the accused's excessive use of intoxicants and drugs, particularly absinthe and morphine, before and at the time of his arrest; that the particular characteristic of the use of such liquor and drug is to make their user and habitue secretive as to their use, deceitful, careless of results, forgetful and irresponsible, and that counsel for the accused had no knowledge of said habits of the accused until after the trial; it appearing that the accused was in jail, denied the use of such drugs, and at the latter date was apparently in possession of all his faculties.

WINCH, J.; HALE, J., and MARVIN, J., concur.

Error to the Court of Common Pleas of Summit County.

Plaintiff in error was arrested on May 15th, 1903, charged with having participated with two others in robbing one Robert Spinner. He was incarcerated in the county jail and remained there until his trial at the September Term of the Common Pleas Court of Summit County, and on October 28, 1903, was found guilty by the verdict of a jury. October 29, 1903, he filed a

motion for a new trial, which, on November 4, 1903, was over-ruled by the court, and he was thereupon sentenced to two years in the penitentiary. No exception to the overruling of this motion was taken, but on November 5 another motion for a new trial on the ground of newly discovered evidence was filed, accompanied by many affidavits setting forth, in substance, that at the time the robbery was committed the accused was so addicted to and under the influence of intoxicants.and drugs that he was not accountable for what he did, and this was unknown at the time of the trial and could not with reasonable diligence have been discovered.

It appears from these affidavits that the young man was of good family, was a member of the bar of New York, and had been assistant corporation counsel of New York city, sustaining a good reputation; that on Christmas day, 1901, he met with an accident, was taken to a hospital, was given narcotics to allay his pain, became used to taking morphine, gradually became a slave to the habit, indulging in drinking whisky and absinthe to excess, descended the social and moral scale until he became a tramp, wandering about the country, associating with low and vicious characters, suffered from his excesses to such an extent that his moral and intellectual faculties were blunted; became a wreck, in fact, frequently being in prison, sometimes at his own request, that he might be restrained from himself and sobered up. He made known none of these facts to counsel assigned to defend him, nor did any of his family know that he was charged with a crime until after he had been convicted thereof.

It may fairly be supposed that the numerous affidavits to sustain the last motion for a new trial were procured in an effort by the parents of this young man to save him and themselves from the disgrace of his commitment to the penitentiary.

This last motion for a new trial was overruled, exceptions taken, bill of exceptions prepared and filed with a petition in error in this court.

The prosecuting attorney claims that no exceptions having been taken to the overruling of the first motion for a new trial nothing is before us for review except the ruling of the trial judge upon the last motion for a new trial, but we hold that

the entire case is before us for examination of such rulings as
the trial judge made that were excepted to by the accused at
the trial.   These matters we shall examine in their order.

First.   It is claimed that certain declarations of the prosecut-
ing witness, Spinner, made in the presence of the accused should
have been excluded.   It appears that the accused and one of
his companions were arrested in the evening shortly after the
commission of the crime alleged, and taken by two officers, Good-
enberger and Benson, to the boarding house of the prosecuting
witness, Spinner, for identification by him.   The questions and
answers objected to referred to a conversation of the accused
at that time narrated by Goodenberger, and are as follows:

"Q.   State what was said?   A.   We asked Spinner in effect,
probably not in the same words, whether these were the parties
that robbed him, and he pointed at the accused and said he was
one, and he looked at Macklin (Macklin was leaning up against
a showcase there), and first he said he didn't look tall enough,
and after Macklin straightened up and turned around so he
could get a good look at him, he said he was one of the other
men.
"Q.   Do you remember any other conversation that occurred
in the presence of the accused either between you and the ac-
cused or Spinner and the accused in that house?   A. Yes, sir.
"Q.   You may relate it?   A.   Just as soon as we got in the
house the accused said, 'I do remember meeting a colored man
on some street over here and asking him for some tobacco.' "

It appears that without objection Spinner himself, when on
the stand, testified to the same conversation as follows:

"Q.   Now, Robert, what is the fact as to whether or not you
identified the accused there as one of the fellows?   A.   As
soon as I seen him I knowed him.   I said, 'You are the fellow
that got my tobacco.'   'Yes,' he says, 'I did get the tobacco
off a colored fellow.'   I says, 'You are the man that robbed
me.'   'No,' he says, 'I never robbed you.   I got tobacco from a
little colored fellow, but never robbed you.' "

Officer Benson's testimony on the subject is as follows:

"Q.   Tell what was done, what took place?   A.   Gooden-
berger told the lady right over there, asked her, 'Is Mr. Spinner
here?'   She says, 'I guess he went to bed.'
"Q.   Go ahead.   A.   She went up and got him and he come
down.   As soon as he come inside the door, as soon as he looked

at the accused, 'You are the one' he said 'that helped to rob me,' he says.

"Q.   Who did he say that to?   A.   The accused."

It thus appears that the accused at this time made a statement tending to connect himself with the crime.   His acknowledgment that he had met Spinner about the time and place claimed by the latter, and asked him for tobacco, was significant, tended to identify him as one of the robbers, and was proper evidence for the consideration of the jury.

. The rule that statements of third persons to the accused charging him with crime, and his conduct or replies in response thereto, are admissible, was laid down by this court in the case of *Moran* v. *The State,* 11 C. C., 464, and affirmed by the Supreme Court.   The opinion of the court by Judge Hale sets forth our views of this matter, and we believe fully applies to this case.

"On the night of the homicide and about one hour after the assault, Moran was arrested by two police officers without a warrant, and taken to the house of Theodore Blakeslee, 73 Church street, where the crime was committed.   Blakeslee was assaulted and mortally wounded at the same time the assault was made upon Fox, and undoubtedly by the same person.

"At the time Moran was brought to his house, Blakeslee was lying on the floor in a dying condition, and did, in fact, expire a short time thereafter.

"Mrs. Blakeslee claimed to have seen the murderer as he left the house after the assault, and was brought into the room for the purpose of determining whether Moran was the man she had seen.   Several witnesses were permitted to testify to what occurred while Moran was there and in his presence, including statements made by Mrs. Blakeslee to or about Moran. The introduction of this testimony was resisted on the ground that Moran was at the time under arrest, and not called upon to make answer to charges made against him, and should not be prejudiced by the fact that he remained silent.        •

"When brought into the room Mrs. Blakeslee said, in substance, 'You are the man that killed my husband; you did it,' or 'there is the man that killed my husband; he did it.'   It will be conceded that if Moran had made answer to the charge thus made to him or in his hearing, both the statements made to him and his reply would be competent.

"It appears from the record that testimony was given tending to establish the fact that Moran did not keep silent, but did speak.   One witness says he heard Moran say in a low tone: 'My God, did I do that?'

"If this be true, the testimony was competent.  It was not for the court to say that it was untrue, and therefore reject the testimony.

"Many of the witnesses did not hear the statement of Moran, but that does not affect the competency of the testimony, if there was testimony tending to establish the fact that such statement was made by him and heard by others.  Both statements may not be heard or testified to by the same person.  Nor does the order in which the testimony goes to the jury affect its competency, if both finally get to the jury.  For this reason alone the testimony was properly received.

"But even if no statements were made by Moran, the testimony under the circumstances, was, we think, competent.  We know that there is some conflict in the decisions of the different states on this question, and while the precise point has not been determined by the Supreme Court of this state, we think the tendency of the decisions is in favor of the admissibility of this testimony, leaving the weight to be determined by the jury. *Murphy* v. *State*, 36 O. S., 628.

"This testimony is of more or less value, depending upon the particular circumstances surrounding the case at the time, and should undoubtedly be examined with great care and caution, as the jury were told to do in this case."

We, therefore, hold that there was no error in the admission of the testimony objected to.

Second.  Exception is taken to the testimony of Detective Doerler in which he gave a conversation with the accused a few days before his arrest, in which the detective claimed he ordered the accused out of town.  This testimony was incompetent, but it appears from the bill of exceptions that upon cross-examination of the defendant he was asked if Doerler had not ordered him out of town, and defendant, without waiting for the court to rule upon the question, answered "no."  On redirect-examination, the defendant testified to his conversation with Doerler and gave his version of it.  In rebuttal the state called Doerler, who gave his recollection of the conversation, to which the defendant excepted.

We think that under these circumstances Doerler's testimony was admissible.

It has frequently been held that where inadmissible or immaterial or irrelevant evidence has been admitted in behalf of one party, similar evidence may be admitted to rebut it, and where part of an act or declaration is given in evidence by one party,

the other party is entitled to inquire into the whole.   20 Am. Dig., 450, and cases cited.

It is said by Jones in the first volume of his Law of Evidence, Section 169, that the reason for this rule is, that it would be manifestly unjust, if one party is permitted to introduce irrelevant testimony, to prevent the other party from rebutting or explaining it.   So it seems to us, though some courts have held that the introduction of immaterial evidence to meet immaterial evidence, is within the discretion of the trial judge.   *Treat* v. *Curtis*, 124 Mass., 348; *Fusbush* v. *Goodwin*, 25 N. G., 425.

In either view of the case there was no error in the admission of the testimony of Doerler, for which this case should be reversed.

It remains to consider the claim of plaintiff in error that the trial court erred in overruling the motion for a new trial, which was based upon the ground of newly discovered evidence.   The character of this so-called newly discovered evidence has been given.   The motion is based upon the fifth clause of Section 7350, Revised Statutes, which provides that a new trial may be granted for "newly discovered evidence material for the defendant which he could not with reasonable diligence have discovered and produced at the trial."

Whether this evidence, if it had been submitted at the trial, would probably have changed the result it is not necessary for us to determine; for we are of the opinion that the evidence set forth in the affidavits accompanying the motion does not come within the provision of the statute that it shall be "newly discovered" and such that defendant "could not with reasonable diligence have discovered and produced at the trial."

That the accused just before he was arrested had been drinking to excess, and had been twice locked up for intoxication and that he might sober up, was testified to by himself at the trial.

But it is claimed that the use by him of absinthe and morphine was not known to his counsel at the time of the trial. This may be so.   It is also claimed that the particular characteristic of the use of such liquor and drug is to make their user and habitue secretive as to their use, deceitful, careless of results, forgetful and irresponsible.   Such may be the case.

That counsel for the accused did not know of this evidence does not make it newly discovered, if at any time previous to the trial defendant, who must be presumed to know the most about it, was able to communicate it to him. *Isaacs* v. *People,* 118 Ill., 538; *Pace* v. *State,* 63 Ga., 159; *Russell* v. *Oliver,* 78 Tex., 11.

But was the defendant at the time of the trial able to communicate it to him?

It must be remembered that the accused was arrested May 15, 1903, but not tried until October 28, 1903, over five months later. During all that time he was in jail and must have materially recovered from any bad effects resulting from the use of intoxicants and drugs. There is no evidence that such was not the case. The affidavits all refer to his condition before and at the time he was arrested, and not to his condition at the time of the trial.

He was an attorney and knew the value of such evidence.

He himself testified in the police court the morning after the robbery occurred, and again at his trial before the common pleas court. It appears from the counter-affidavits on the motion that he sat at the trial table with his counsel and made suggestions to him as to the manner of conducting his defense. He argued his own case to the jury. From these circumstances we must conclude that he was abundantly able to communicate all of the facts as to his previous habits and condition to his counsel and offer them in evidence. That he did not do so was his own neglect, and upon this he can not base his right to a new trial.

The motion will be denied if the mover has been guilty of laches. *Moore* v. *Coates,* 35 O. S., 177.

It was held in the case of *Nesbit* v. *People,* 19 Col., 441, that—

"A motion for a new trial, on a charge of murder, for newly discovered evidence will not be granted where it consists of the professional opinion as to the mental condition of defendant, and no efforts were shown to obtain it before trial."

In the case of *Cooper* v. *State,* 122 Ind., 377, the court says—

"Where the defendant, in a trial for murder, testifies as to all the circumstances of the homicide, which occurred more than three years before, and seeks to justify it on the sole ground of self-defense, a new trial will not be granted on the ground

of newly discovered testimony to the effect that defendant had been drinking to excess for several months before the homicide, and was on the verge of delirium tremens.''

The affidavits filed in this cause make a case very similar to the case of *People* v. *Hovey,* 30 .Hun., 354, from which I quote as follows:

''The defendant was tried and convicted of murder in the first· degree for shooting his sister-in-law on April 20, 1882. There was present at the time of the shooting of the deceased, the defendant and his wife. The defendant was examined in his own behalf and testified that the shooting was accidental, stating in detail how it occurred and what he did and said on that day. It appeared by the testimony of. several of the witnesses, and to some extent by the testimony of the defendant himself, that he had been drinking for some days before the commission of the crime, and that he was intoxicated at the time of its commission. The conviction was affirmed by the General Term on March 22, and by the Court of Appeals on July 5, 1883.

''On July 11, 1883, the defendant moved for a new trial upon the ground of newly discovered evidence. The affidavits, which were made by public officers attached to the police and prison force of New York, tended to show that the defendant was arrested on April 15, 1882, and committed to prison for three days for intoxication; that at the time of his arrest and while in prison he talked wildly and acted violently so that it was necessary to confine his hands, and that at the time of his discharge he was not fully recovered from the effects of the liquor; that upon the day after his arrest for the homicide the city physician visited him and found him in a highly nervous and excited condition, the result of the excessive use of alcohol; that he complained of being unable to sleep or control himself, which symptoms resulted from the abuse of alcohol and the deprivation of sedatives he had been in the habit of taking; that he was under treatment for these troubles for some two weeks; that in the opinion of the said physician at the time of such examination the mind of the prisoner was in such a condition that he was oblivious of his actions during the week preceding said examination. These facts were not communicated to the defendant's counsel until the latter part of June, 1883.

''*Held:* That it was not probable that the evidence, if received, would have changed the verdict.

''That the evidence had not been discovered since the trial within the meaning of the said section, inasmuch as the facts of his arrest, confinement and sickness must have been known to

the defendant, although he might not have known the exact condition, physically and mentally, in which he then was, and that it was his duty to have made these facts known to his counsel if he deemed them important; that the only fact newly discovered was that it might have been of some importance to himself if evidence of these facts had been produced on the trial.

"That as the condition and mental operations of the defendant were questions necessarily involved upon the trial the evidence was cumulative.

"That the failure of the defendant to produce the evidence upon the trial was due to his want of diligence."

In this state it has been held by the Circuit Court of the Fifth Circuit (11 C. C., 18), that—

"Motions for new trial, based upon newly discovered evidence, are usually addressed largely to the discretion of the trial court, and that court having passed upon the case in all its aspects, a reviewing court will not interfere with the action of the trial court, especially if it sees no ground for such interference."

We think this well states the law and adopt it. Believing that the trial court properly overruled said motion, we find no error in its so doing.

Our attention has been called to the fact that the plaintiff in error for about a year has been imprisoned in the county jail, no part of which time counts as part of his sentence of two years in the penitentiary.

It has also been suggested that the young man has been rehabilitated, has overcome his bad habits, recovered from the use of drugs and stimulants and been sufficiently punished; that confinement in the penitentiary will not further reform him nor benefit society; that such confinement may have the opposite effect. While feeling the weight of these suggestions, we know of no jurisdiction this court has to reduce the sentence, and suggest that such representations should rather be made to the pardoning power, in which we have no part.

Judgment is affirmed.

*Rogers, Rowley, Bradley & Rockwell,* for plaintiff in error.

*H. M. Hagelbarger,* Prosecuting Attorney, for defendant in error.