McLaughlin v. State.            |Vol. 20 (N.S.)

---

### PROOF OF GUILT UNDER AN INDICTMEMT FOR ROBBERY.

Circuit Court of Summit County.

JOHN McLAUGHLIN v. STATE OF OHIO.

Decided, April, 1905.

*Evidence—Trials—Statements of Third Parties in Presence of Accused; When Admissible—Record of Whole Case Before Reviewing Court —Immaterial Evidence Admissible to Rebut Like Evidence—Evidence Known to Party Not Newly-Discovered.*

1. Statements of third persons to the accused, charging him with crime and his conduct or replies in response thereto, are admissible in evidence.
2. Where a motion for a new trial is overruled and no exceptions taken thereto and a second motion for a new trial made on the ground of newly-discovered evidence is also overruled, to which exceptions are taken and the case taken on error to the circuit court, the record of the entire case is before the court for review.
3. Where immaterial evidence has been admitted on behalf of one party similar evidence then becomes admissible on the part of the other party to explain or rebut it.
4. A new trial will not be granted on the ground of newly-discovered evidence, simply because the counsel for the accused did not know

of the existence of the evidence, when it was possible for the defendant to communicate it to him at any time previous to the trial, and he failed to do so.

WINCH, J.; HALE, J., and MARVIN, J., concur.

Plaintiff in error was arrested on May 15th, 1903, charged with having participated with two others in robbing one Robert Spinner. He was incarcerated in the county jail and remained there until his trial at the September term of the Common Pleas Court of Summit County, and on October 28th, 1903, was found guilty by the verdict of a jury. October 29th, 1903, he filed a motion for a new trial, which on November 4, 1903, was overruled by the court, and he was thereupon sentenced to two years in the penitentiary. No exceptions to the overruling of this motion were taken, but on November 5th another motion for a new trial on the ground of newly-discovered evidence was filed, accompanied by many affidavits setting forth, in substance, that at the time the robbery was committed the accused was so addicted to and under the influence of intoxicants and drugs that he was not accountable for what he did, and that this was unknown at the time of the trial and could not, with reasonable diligence, have been discovered.

It appears from these affidavits that the young man was of good family, was a member of the bar of New York, and had been assistant corporation counsel for New York City, sustaining a good reputation; that on Christmas day, 1901, he met with an accident, was taken to a hospital, was given narcotics to allay his pain, became used to taking morphine, gradually became a slave to the habit, indulging in drinking whiskey and absinthe to excess, descended the social and moral scale until he became a tramp, wandering about the country, associating with low and vicious characters, suffered from his excesses to such an extent that his moral and intellectual faculties were blunted, became a wreck; in fact, frequently being in prison, sometimes at his own request that he might be restrained from himself and sobered up. He made known none of these facts to counsel assigned to defend him, nor did any of his family know that he was charged with crime until after he had been convicted thereof.

It may fairly be supposed that the numerous affidavits to sustain the last motion for a new trial were procured in an effort by the parents of this young man to save him and themselves from the disgrace of his commitment to the penitentiary.

This last motion for a new trial was overruled, exceptions taken, and bill of exceptions prepared and filed with a petition in error in this court.

The prosecuting attorney claims that no exceptions having been taken to the overruling of the first motion for a new trial, nothing is before us for review except the ruling of the trial judge upon the last motion for a new trial, but we hold that the entire case is before us for examination of such rulings as the trial judge made that were excepted to by the accused at the trial. These matters will be examined in their order.

First. It is claimed that certain declarations of the prosecuting witness, Spinner, made in the presence of the accused, should have been excluded. It appears that McLaughlin and one of his companions were arrested in the evening shortly after the commission of the crime alleged, and taken by two officers, Goodenberger and Benson, to the boarding house of the prosecuting witness, Spinner, for identification by him. The questions and answers objected to referred to conversation of the accused at that time, narrated by Goodenberger, and are as follows:

"Q. State what was said? A. We asked Spinner in effect, probably not in the same words, whether these were the parties that robbed him, and he pointed at McLaughlin and said he was one, and he looked at Macklin, Macklin was leaning up against a showcase there, and first he said he didn't look tall enough, and after Macklin straightened up and turned around so he could get a good look at him, he said he was one of the other men.

"Q. Do you remember any other conversation that occurred in the presence of McLaughlin either between you and McLaughlin or Spinner and McLaughlin in that house? A. Yes, sir.

"Q. You may relate it? A. Just as soon as we got in the house McLaughlin said, 'I do remember meeting a colored man on some street over here and asking him for some tobacco.'"

It appears that without objection Spinner himself, when on the stand, testified to the same conversation as follows:

"Q. Now, Robert, what is the fact as to whether or not you identified McLaughlin there as one of the fellows? A. As soon as I seen him I knowed him. I said, 'You are the fellow that got my tobacco.' 'Yes,' he says, 'I did get the tobacco off a colored fellow.' I says, 'You are the man that robbed me.' 'No,' he says, 'I never robbed you. I got tobacco from a little colored fellow, but never robbed you.'"

Officer Benson's testimony on the subject is as follows:

"Q. Tell what was done, what took place? A. Goodenberger told the lady right over there, asked her, 'Is Mr. Spinner here?' She says. 'I guess he went to bed.'
"Q. Go ahead. A. She went up and got him and he come down. As soon as he come inside the door, as soon as he looked at McLaughlin, 'You are the one,' he said, 'That helped to rob me,' he says.
"Q. Who did he say that to? A. McLaughlin."

It thus appears that the accused at this time made a statement tending to show his connection with the crime. His acknowledgment that he had met Spinner about the time and place claimed by the latter, and asked him for his tobacco, was significant, tended to identify him as one of the robbers and was proper evidence for the consideration of the jury.

The rule that statements of third persons to the accused, charging him with the crime, and his conduct or replies in response thereto, are admissible, was laid down by this court in the case of *Moran* v. *State,* 11 C. C., 464, and affirmed by the Supreme Court. The opinion of the court by Judge Hale sets forth our views of this matter, and we believe fully applies to this case.

We, therefore, hold that there was no error in the admission of the testimony objected to.

Second, exception is taken to the testimony of Detective Doerler in which he gave a conversation with the accused a few days before his arrest, in which the detective claimed he ordered McLaughlin out of town. This testimony was incompetent, but it appears from the bill of exceptions that upon cross-examina-

tion of the defendant he was asked if Doerler had not ordered him out of town, and defendant, without waiting for the court to rule upon the question, answered "No." On re-direct examination the defendant testified to his conversation with Doerler and gave his version of it. In rebuttal the state called Doerler, who gave his recollection of the conversation, to which the defendant excepted.

We think that under these circumstances Doerler's testimony was admissible.

It has frequently been held that where inadmissible or immaterial or irrelevant evidence has been admitted in behalf of one party, similar evidence may be admitted to rebut it, and where part of an act or declaration is given in evidence by one party, the other party is entitled to inquire into the whole. 20 Am. Digest, 450, and cases cited.

It is said by Jones in the first volume of his Law of Evidence, Section 169, that the reason for this rule is, that it would be manifestly unjust, if one party is permitted to introduce irrelevant testimony, to prevent the other party from rebutting or explaining it. So it seems to us, though some courts have held that the introduction of immaterial evidence to meet immaterial evidence is within the discretion of the trial judge. *Treat* v. *Curtis*, 124 Mass., 348; *Fushbush* v. *Goodwin*, 25 N. C., 425.

In either view of the case there was no error in the admission of the testimony of Doerler, for which this case should be reversed.

It remains to consider the claim of plaintiff in error that the trial court erred in overruling the motion for a new trial, which was based upon the ground that there was newly-discovered evidence. The character of this so-called newly-discovered evidence has been given. The motion is based upon the fifth clause of Section 7350, Revised Statutes, which provides that a new trial may be granted for "newly-discovered evidence, material for the defendant, which he could not with reasonable diligence have discovered and produced at the trial."

Whether this evidence, if it had been submitted at the trial, would probably have changed the result is not necessary for us to determine, for we are of the opinion that the evidence set forth in the affidavits accompanying the motion does not come within the provision of the statute that it shall be "newly-discovered" and such that defendant "could not, with reasonable diligence, have discovered and produced at the trial."

That the accused just before he was arrested had been drinking to excess, and had been twice locked up for intoxication that he might sober up, was testified to by himself at the trial.

But it is claimed that the use of absinthe and morphine was not known to his counsel at the time of the trial. This may be so. It is also claimed that the particular characteristics of the use of such liquor and drug is to make their user and habitue secretive as to their use, deceitful, careless of results, forgetful and irresponsible. Such may be the case.

That counsel for the accused did not know of this evidence does not make it newly-discovered, if at any time previous to the trial, defendant, who must be presumed to know the most about it, was able to communicate it to him. *Isaacs* v. *People,* 118 Ill., 538; *Pace* v. *State,* 63 Ga., 159; *Russell* v. *Oliver,* 78 Tex., 11.

But was the defendant at the time of the trial able to communicate it to him?

It must be remembered that the accused was arrested May 15th, 1903, but not tried until October 28th, 1903, over five months later. During all that time he was in jail and must have materially recovered from any bad effects resulting from the use of intoxicants and drugs. There is no evidence that such was not the case. The affidavits all refer to his condition before and at the time he was arrested, and not to his condition at the time of the trial. He was an attorney and knew the value of such evidence.

He himself testified in the police court the morning after the robbery occurred, and again at his trial before the common pleas court. It appears from the counter-affidavits on the motion that he sat at the trial table with his counsel and made sugges-

tions to him as to the manner of conducting his defense.    He argued his own cause to the jury.    From these circumstances we must conclude that he was abundantly able to communicate all of the facts as to his previous habit and condition to his counsel, and offer them in evidence.    That he did not do so was his own neglect, and upon this he can not base his right to a new trial.

The motion will be denied if the mover has been guilty of laches.    *Moore* v. *Coates,* 35 O. S., 177.

It was held in the case of *Nesbit* v. *People,* 19 Col., 441, that:

"A motion for a new trial, on a charge of murder, for newly-discovered evidence, will not be granted where it consists of the professional opinion as to the mental condition of the defendant, and no efforts were shown to obtain it before trial."

In the case of *Cooper* v. *State,* 122 Ind., 377, the court says:

"Where the defendant in a trial for murder testifies as to all the circumstances of the homicide, which occurred more than three years before, and seeks to justify it on the sole ground of self-defense, a new trial will not be granted on the ground of newly-discovered testimony, to the effect that defendant had been drinking to excess for several months before the homicide, and was on the verge of delirium tremens."

The affidavits filed in this cause make a case very similar to the case of *People* v. *Hovey,* 30 Hun., 354, from which I quote as follows:

"The defendant was tried and convicted of murder in the first degree, for shooting his sister-in-law on April 20, 1892. There was present at the time of the shooting of the deceased, the defendant and his wife.    The defendant was examined in his own behalf, and testified that the shooting was accidental, stating in detail how it occurred and what he did and said on that day.

"It appeared by the testimony of several of the witnesses, and to some extent by the testimony of the defendant himself, that he had been drinking for some days before the commission of the crime, and that he was intoxicated at the time of its commission.    The conviction was affirmed by the general term on March 22, and by the court of appeals on July 5th, 1883.

"On July 11th, 1883, the defendant moved for a new trial upon the ground of newly-discovered evidence. The affidavits which were made by public officers attached to the police force and prison force of New York, tended to show that the defendant was arrested on April 15th, 1882, and committed to prison for three days for intoxication; that at the time of his arrest and while in prison he talked wildly and acted violently, and so that it was necessary to confine his hands, and that at the time of his discharge he was not fully recovered from the effects of the liquor; that upon the day after his arrest for the homicide, the city physician visited him and found him in a highly nervous and excited condition, the result of the excessive use of alcohol; that he complained of being unable to sleep or control himself, which symptoms resulted from the abuse of alcohol and the deprivation of sedatives he had been in the habit of taking; that he was under treatment for these troubles for some two weeks; that in the opinion of the said physician at the time of such examination the mind of the prisoner was in such a condition that he was oblivious of his actions during the week preceding said examination. These facts were not communicated to the defendant's counsel until the latter part of June, 1883.

"*Held*: That it was not probable that the evidence, if received, would have changed the verdict.

"That the evidence had not been· discovered since the trial, within the meaning of the said action, inasmuch as the facts of his arrest, confinement and sickness, must have been known to the defendant, although he might not have known the exact condition, physically and mentally, in which he was then, and that it was his duty to have made these facts known to his counsel, if he deemed them important; that the only fact newly discovered was that it might have been of some importance to himself, if evidence of these facts had been produced on the trial.

"That as the condition and mental operations of the defendant were questions necessarily involved upon the trial, the evidence was cumulative.

"That the failure of the defendant to produce the evidence upon the trial was due to his want of diligence."

In this state it has been held by the circuit court of the fifth circuit (11 C. C., 18),·that:

"Motions for new trial, based upon newly-discovered evidence are usually addressed largely to the discretion of the trial court, and that court having passed upon the case in all its aspects, a reviewing court will not interfere with the action of the trial court, especially if it sees no ground for such interference."

We think this well states the law, and adopt it. Believing that the trial court property overruled said motion, we find no error in its so doing.

Our attention has been called to the fact that the plaintiff in error for about a year had been imprisoned in the county jail, no part of which time counts as part of his sentence of two years in the penitentiary.

It has also been suggested that the young man has been rehabilitated, has overcome his bad habits, recovered from the use of drugs and stimulants and been sufficiently punished; that confinement in the penitentiary will not further reform him nor benefit him or society; that such confinement may have the opposite effect. While feeling the weight of these suggestions, we know of no jurisdiction this court has to reduce the sentence, and suggest that such representations should rather be made to the pardoning power, in which we have no part.

Judgment affirmed.